UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEQUOIA FINANCIAL SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 3065 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| THE CITY OF CHICAGO, HECTOR EXCLUSA, | ) | |
| JORGE HERRERA, MICHAEL MERCHANT, and JOHN | ) | |
| DOE (INSPECTOR NO. BL01036), | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

After the City of Chicago sued Sequoia Financial Solutions, Inc. ("Sequoia"), in Illinois state court for violating the City's building code, Sequoia demolished the allegedly offending structure rather than continue to defend the suit, which the City then dismissed. Two months later, Sequoia brought the present case against the City and several City employees (collectively, "the City") for allegedly falsifying an inspection report and coercing Sequoia into tearing down the structure through its allegedly baseless state court suit. Doc. 1. The City moved to dismiss Sequoia's complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 9. Instead of opposing the motion, Sequoia sought and received leave to file an amended complaint. Docs. 16, 18. The City now moves to dismiss the amended complaint under Rule 12(b)(6). Doc. 26. The motion is granted, and the case is dismissed.

**Background**

In considering the City's motion, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [amended] complaint,

1

documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Sequoia's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are stated as favorably to Sequoia as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In June 2006, Miguel Murchison executed a promissory note secured by a mortgage on property located at 12448 South Lowe Avenue in Chicago. Doc. 18 at ¶ 12. Sequoia acquired the note and mortgage in September 2012. *Id.* at ¶ 15; Doc. 18-4. In October 2012, the Chicago Department of Buildings sent Sequoia (actually, a closely related entity sharing the same address) a notice stating that the structure on the property was hazardous and giving Sequoia fifteen days to restore or demolish it; the notice warned that if Sequoia did not take remedial action during this time, the City would seek a lien for the costs of demolishing the building or abating its hazards. Doc. 18 at ¶ 17; Doc. 18-5. In an email to a City employee, Sequoia offered to "register the property as vacant, board up the windows, and secure the doors," while explaining that it was only "the lender" and thus had limited ability to abate the hazard, at least until it completed "the foreclosure process." Doc. 18-6; Doc. 18 at ¶¶ 20-21. The City did not respond to the email. Doc. 18 at ¶ 22.

In May 2013, the City filed suit against Murchison and Sequoia in *City of Chicago v. Murchison*, No. 13 M1 401374 (Cir. Ct. Cook Cnty., Ill.). Doc. 28-1 at 28-38; *see Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that a federal court deciding a motion to dismiss may take judicial notice of publicly filed state court pleadings). The City's suit sought to abate the allegedly dangerous and unsafe conditions at the property and requested

an order requiring Murchison and Sequoia to "repair, enclose, clean-up, or demolish the building" and to pay civil penalties, attorney fees, and costs. Doc. 18 at ¶ 23; Doc. 28-1 at 33. The suit initially named Sequoia Financial Solutions Holdings LLC as the defendant mortgagee; that technical glitch was repaired when the state court dismissed the LLC and an alias summons was issued to and served on the actual mortgagee, Sequoia Financial Solutions, Inc. Doc. 18 at ¶ 26; Doc. 28-1 at 40, 42-43.

In October and December 2013, the state court issued two orders requiring Murchison to board and secure certain of the structure's windows and to keep the premises vacant and secure. Doc. 28-1 at 40, 45. In February and March 2014, before the suit could be resolved—and without the court entering any order requiring demolition—Sequoia demolished the structure. Doc. 18 at ¶¶ 27-28. The City then voluntarily dismissed the suit with prejudice, with the court making a finding of "Substantial Compliance" and imposing no fines or costs. *Id*. at ¶ 29; Doc. 28-1 at 47.

Two months later, Sequoia filed this suit in federal court, alleging that the City falsified inspection reports and "forced" Sequoia, by threatening fines and bringing the state court suit, to demolish the building. The amended complaint has nine counts: claims under 42 U.S.C. § 1983 for the violation of Sequoia's federal constitutional rights (Count I); a *Monell* claim against the City (Count II); a state law tortious interference with a business expectancy claim (Count III); a state law fraud claim (Count IV); a takings claim under both the Illinois (Count V) and federal (Count VI) constitutions; a state law abuse of process claim (Count VII); a claim for conspiracy to violate § 1983 and state law (count VIII); and an indemnification claim against the City (Count IX). Doc. 18 at ¶¶ 43-112. Jurisdiction over the federal claims lies under 28 U.S.C.

3

§ 1331, while jurisdiction over the state law claims lies under 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000. *Id*. at ¶¶ 1-4, 11, 16.

## Discussion

I.  **Section 1983 Claims (Counts I, II, and VIII)**

Count I alleges that the City deprived Sequoia of its federal rights "such as but not limited to its due process rights under the Fifth and Fourteenth Amendments and its access to courts under the First Amendment and right to a jury trial under the Seventh Amendment." *Id*. at ¶ 44. The First and Seventh Amendment claims are puzzling. The City did not *deny* Sequoia access to state court; it *brought* Sequoia there, in effect giving Sequoia more access than it wanted. Nor did the City deny Sequoia its Seventh Amendment right to a jury trial in civil cases. That right has not been incorporated via the Fourteenth Amendment against the States. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010). In any event, by virtue of its destroying the building before the court could consider whether demolition was required, Sequoia itself is indisputably responsible for the state court suit's termination before trial.

Sequoia's due process alleges that the City "mischaracterized and falsified the alleged housing code violations" and "willfully intimidated, coerced or extorted Plaintiff into 'voluntarily' demolishing the Property." Doc. 18 at ¶ 45. Although Sequoia does not expressly say whether it means to pursue a substantive due process or a procedural due process claim, its argument and the case law it cites make clear that the claim sounds in substantive due process. As shown in Section III, *infra*, Sequoia's due process claim is dismissed for lack of ripeness. And even if the claim were ripe, it would fail on the merits.

As relevant here, substantive due process protects individuals from "abuse[s] of government power which 'shock[] the conscience.'" *Tun v. Whitticker*, 398 F.3d 889, 902 (7th

4

Cir. 2005). The "shock the conscience" standard is difficult to meet, as "every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). Significantly, the Seventh Circuit recently held that although "[f]orcing a person to defend a pointless suit is objectionable," it does not offend substantive due process. *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 553 (7th Cir. 2014). In *Viehweg*, the plaintiff, a man named Viehweg, sued Mount Olive, Illinois, for bringing a baseless suit to force him to demolish his detached garage, which according to Mt. Olive violated a municipal ordinance. *Id*. at 551-52. The Seventh Circuit held that "[t]he city's filing of a frivolous petition" to demolish the garage did not offend substantive due process because Viehweg "had available to him—as part of that very litigation—remedies to protect him from a vexatious suit." *Id.* at 553. Even assuming that the City's suit against Sequoia is as baseless as Mt. Olive's suit against Viehweg, Sequoia had similar remedies available in state court. Sequoia chose not to take advantage of those remedies, deciding to demolish the building rather than litigate. Sequoia's allegation that it acted only under "threat of … extensive fines, false allegations, and court prosecution," Doc. 18 at ¶ 27, does not distinguish its case from Viehweg's, who faced comparable threats. Sequoia's due process claim accordingly is meritless.

Counts II and VIII fall along with Count I. As for Count II, there can be no *Monell* claim without an underlying constitutional violation, and here no such violation has been alleged. *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("To establish municipal liability and prevail on his *Monell* claim, … [the plaintiff] must establish: (1) that *he* suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct. But if no constitutional violation occurred in the first place, a *Monell* claim cannot be

5

supported.") (citation omitted); *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights"). The same holds for the § 1983 conspiracy claim in Count VIII. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in § 1983 actions"); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("The jury's conclusion that the Cefalus suffered no constitutional injury thus forecloses relief on the conspiracy claim."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) ("[T]o sustain a conspiracy action under § 1983 … a plaintiff must show an underlying actual denial of [his] constitutional rights."); *Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002) ("In the absence of [an underlying constitutional] violation, there is no actionable [§ 1983] conspiracy claim.").

## II. State Law Tortious Interference, Fraud, and Abuse of Process Claims (Counts III, IV, VII, and VIII)

Tortious interference with a prospective business expectancy has four elements: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009) (Illinois law). The amended complaint alleges that Sequoia purchased the note and mortgage "with the reasonable business expectation of selling the collateralized loan to third-party purchasers" and that the City interfered with that expectation by filing its allegedly baseless suit. Doc. 18 at ¶¶ 61-65. Sequoia's allegations are insufficient to plead a tortious interference claim.

Applying Illinois law, the Seventh Circuit has held that "[a] plaintiff states a [tortious interference] cause of action *only* if he alleges a business expectancy with a *specific* third party as well as action by the defendant *directed towards* that third party." *Ali v. Shaw*, 481 F.3d 942, 946 (7th Cir. 2007) (quoting *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. 2005)) (emphasis added); *see also Liatos v. Forest Preserve Dist. of Kane Cnty.*, 2012 WL 6967622, at *11 (Ill. App. June 29, 2012) (same). Sequoia does not allege a prospective business relationship with a particular third-party, and nor does it allege that the City directed its actions toward any third party (general or specific). The City raised these very issues in moving to dismiss the original complaint, Doc. 10 at 8-9, and Sequoia's failure to cure these pleading deficiencies in its amended complaint implicitly but clearly concedes that the deficiencies cannot be cured.

Sequoia's fraud claim alleges that the City falsified the inspection report upon which the state court suit was predicated, and that Sequoia "relied upon the false threat of suit, created by the falsified inspection report, in being induced to demolish the property." Doc. 18 at ¶ 71. An element of common law fraud is that "the plaintiff reasonably believed the [defendant's false] statements and justifiably acted in reliance on those statements." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (Illinois law); *see also Cannon v. Burge*, 752 F.3d 1079, 1093 (7th Cir. 2014) (Illinois law) (rejecting a fraud claim where the plaintiff "could not have reasonably believed [the defendants'] statements to be true, and could not have reasonably relied on the truth of their statements"). "[J]ustifiable reliance exists when it was reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (Illinois law) (internal quotation marks omitted). Put differently, "[t]o find justifiable reliance, the court considers whether the party was

7

reasonable in relying on his adversary's representation in light of the facts within his actual knowledge and any he might have discovered by the exercise of ordinary prudence." *D.S.A. Finance Corp. v. Cnty. of Cook*, 801 N.E.2d 1075, 1081 (Ill. App. 2003).

The fraud claim fails because Sequoia has not pleaded and could not plausibly allege that it reasonably relied on the City's allegedly false inspection report. The reason is plain: When Sequoia arrived at the Lowe property to conduct the demolition, it easily could have inspected the structure—in *Wigod*'s words, it could have undertaken an "independent inquiry or investigation"—to see whether the City's report was accurate in whole, in part, or not at all. If such an inspection indicated that the City's report was materially incorrect, Sequoia surely could have and reasonably should have marched into state court and challenged the City's averments. Given this, it is no wonder that Sequoia does not allege that its (alleged) reliance on the City's (alleged) falsehoods was reasonable, as any such allegation would be wholly implausible. *See Cannon*, 752 F.3d at 1093 ("In determining whether Cannon reasonably relied on the defendants' lies, we must take into account all of the facts which Cannon knew, *as well as those facts that Cannon could have learned through the exercise of ordinary prudence*.") (emphasis added); *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 139 (7th Cir. 2011) ("the plaintiff may not blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation") (internal quotation marks and alterations omitted); *Siegel Dev., LLC v. Peak Constr. LLC*, 993 N.E.2d 1041, 1060 (Ill. App. 2013) ("[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another."); *Chi. Export Packing Co. v. Teledyne Indus., Inc.,* 566 N.E.2d 326, 329 (Ill. App. 1990) ("it is only where

8

parties do not have equal knowledge *or means of obtaining knowledge* of the facts which are allegedly misrepresented that a person may justifiably rely on them") (emphasis added).

The City seeks dismissal of the abuse of process claim under the *Rooker-Feldman* doctrine and also on the merits. *Rooker-Feldman* does not apply. The doctrine holds that federal courts have no jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But Sequoia is not a state court loser, as the City's suit was dismissed with prejudice and without costs or fines. And Sequoia is not complaining of injuries caused by any state court judgment. The state court orders, even if they could be characterized as judgments for *Rooker-Feldman* purposes, simply required Murchison to board and secure certain of the structure's windows and to keep the premises vacant and secure, Doc. 28-1 at 40, 45, and Sequoia judicially admits in its amended complaint that it "should have … been required to register the Property as vacant and board up the windows," Doc. 18 at ¶ 96. *See Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir. 1995) ("[T]he *Rooker-Feldman* doctrine … ought to be confined to cases in which the defendant in the state court is seeking to undo a remedial order of some sort.").

The abuse of process claim does, however, fail on the merits. The elements of an abuse of process claim under Illinois law are: "(1) [the] existence of an ulterior motive or purpose, and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 372 (7th Cir. 1998). "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929-30 (Ill. App. 2003).

9

Consistent with this strict approach, "[t]he word 'process' has been given its literal meaning": "[p]rocess is issued by the court[] under its official seal and must be distinguished from pleadings, which are created and filed by the litigants." *Commerce Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 749 (Ill. App. 1994); *see also Cmty. Nat. Bank in Monmouth v. McCrery*, 509 N.E.2d 122, 124 (Ill. App. 1987); *Doyle v. Shlensky*, 458 N.E.2d 1120, 1128 (Ill. App. 1983).

The amended complaint alleges not the misuse of any "process" issued by the state court, but simply that the City instigated its suit with bad motives to achieve a corrupt purpose. Doc. 18 at ¶¶ 95-98. The only "process" the parties have brought to the court's attention—the two state court orders requiring Murchison to board and secure certain windows and to keep the premises vacant and secure, Doc. 28-1 at 40, 45—were, as just noted, proper by Sequoia's own admission, so Sequoia is not complaining about them. Because the "mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process," *Withall v. Capitol Fed. Savings of Am.*, 508 N.E.2d 363, 368 (Ill. App. 1987); *see also Neurosurgery & Spine Surgery*, 790 N.E.2d at 930, the abuse of process claim is dismissed. *See Evans v. West*, 935 F.2d 922, 923 (7th Cir. 1991) (rejecting an abuse of process claim where the plaintiff alleged that the defendant "call[ed] the police and sign[ed] a [false] criminal trespass complaint"); *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 748 (N.D. Ill. 2012) (holding that allegations saying "nothing in terms of a process issued by the court" do not state an abuse of process claim); *Motorola, Inc. v. Lemko Corp.*, 2010 WL 960348, at *3 (N.D. Ill. Mar. 15, 2010) (holding that the mere allegation that the defendant had filed suit to intimidate the plaintiff did not state an abuse of process claim).

Sequoia's state law conspiracy claim fails for essentially the same reason that the § 1983 claim fails. "It is well settled in Illinois that conspiracy does not of itself constitute an actionable

wrong." *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989) (internal quotation marks omitted). Thus, as with conspiracy claims under § 1983, "[w]here … plaintiff fails to state an independent [state law] cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 803 N.Ed.2d 619, 626 (Ill. App. 2004); *see also Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. 2000).

## III. State and Federal Takings Claims (Counts V and VI)

The Fifth Amendment, incorporated against the States and their subdivisions by the Fourteenth Amendment, prohibits the government from taking private property without just compensation, as does Article I, Section 15, of the Illinois Constitution. *See* U.S. Const. amend. V; Ill. Const. art. I, § 15. Both takings claims are dismissed for lack of ripeness because Sequoia has not sought and been denied compensation through appropriate state procedures.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), "the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010) (quoting *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)); *see Williamson Cnty. Regional Planning Comm'n*, 473 U.S. at 195 ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation"); *Gamble v. Eau Claire Cnty.*, 5 F.3d 285, 286 (7th Cir. 1993) ("the landowner cannot complain that his constitutional right has

been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the state"). There is an exception to the *Williamson County* doctrine "if state law does not provide relief," but that exception does not apply here because the Seventh Circuit has held that "Illinois provides ample process for a person seeking just compensation." *Muscarello*, 610 F.3d at 422 (citing 735 ILCS 30/10-5-5).

In the section of its brief devoted to its takings claims, Sequoia does not argue that it exhausted its state remedies. Instead, citing *Daniels v. Area Plan Commission of Allen County*, 306 F.3d 445, 452 (7th Cir. 2002), it argues (for reasons not entirely clear) that an exception applies in this case. Doc. 45 at 19. However, *Daniels* reaffirms the principle, established in *Williamson County*, that takings claims are unripe unless the plaintiff first seeks and is denied just compensation in state court. *See Daniels*, 306 F.3d at 452-54. Sequoia's federal takings claim accordingly is unripe.

The *Williamson County* ripeness doctrine also applies to takings claims brought under the Illinois Constitution's takings clause. *See Forest Preserve Dist. of DuPage Cnty. v. First Nat'l Bank of Franklin Park*, 930 N.E.2d 477, 502-03 (Ill. App. 2010); *LaSalle Bank Nat'l Ass'n v. City of Oakbrook Terrace*, 913 N.E.2d 130, 136 (Ill. App. 2009). As just noted, Illinois provides a statutory procedure for property owners seeking just compensation. *See* 735 ILCS 30/10-5-5; *Muscarello*, 610 F.3d at 422. Sequoia bypassed these procedures, jumping straight to a state constitutional claim, and therefore under *Williamson County* that claim is unripe.

Even if the takings claims were ripe, no taking occurred under the state or federal constitutions. Sequoia admits that the only actions that the state court ordered—boarding up the windows and securing the property—were appropriate. Doc. 18 at ¶ 96. Under both federal and state takings law, such legitimate exercises of the state's police power are not "takings" and thus

do not require just compensation. *See Waldon v. Wilkins*, 400 F. App'x 75, 79 (7th Cir. 2010) ("The demolition … was not an exercise of the county's takings power but rather its police power, which is broader than the takings power and generally will not require compensation for affected property owners."); *Vill. of Lake Villa v. Stokovich*, 810 N.E.2d 13, 28 (Ill. 2004) ("[A]n exercise of police power to prevent a property owner from using his property so as to create a nuisance or a risk of harm to others is not a 'taking' in the constitutional sense."). At the Rule 12(b)(6) stage, the court assumes with Sequoia that the City mischaracterized or falsified the extent of the code violations, so that an order to demolish the building might have been a taking. But no such order issued, as Sequoia demolished the building first, and Sequoia cannot now attribute its decision to destroy its own property to the State.

The *Williamson County* doctrine also applies to federal due process claims where, as here, the plaintiff challenges the government's interference with the plaintiff's use of its land. *See Forseth*, 199 F.3d at 369 ("we have yet to excuse any substantive due process claim in the land-use context from *Williamson*'s ripeness requirements"); *Hager v. City of W. Peoria*, 84 F.3d 865, 869-70 (7th Cir. 1996) ("The exhaustion requirement of *Williamson County* applies whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process violation. That plaintiffs have sued for 'inverse condemnation' with a reference to due process, whether substantive or procedural, therefore does not alter our analysis. … [The plaintiffs] must first pursue their claims, whether in the form of a takings challenge or a due process claim, in Illinois state court.") (footnote and internal citations omitted); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994) ("[A] property owner may not avoid *Williamson* by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has

gone overboard must repair to state court.") (citation omitted); *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 846 (N.D. Ill. 2013). Accordingly, Sequoia's due process claim is dismissed on ripeness grounds under *Williamson County*; in any event, even if the claim were ripe, it would be dismissed on the merits for the reasons stated in Section I, *supra*.

## IV. Indemnification Claim (Count IX)

Sequoia's indemnification claim seeks to hold the City liable for the unlawful acts of the individual defendants. Because none of Sequoia's claims survive, there is nothing for the City to indemnify, so the indemnification claim is dismissed.

## Conclusion

For the foregoing reasons, the City's motion to dismiss is granted and the amended complaint is dismissed. The dismissal is without prejudice as to the due process and takings claims because those claims are being dismissed on ripeness grounds. *See Forseth*, 199 F.3d at 373-74 (affirming the dismissal of federal substantive due process and takings claims without prejudice for lack of ripeness under *Williamson County*); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) ("[T]he district court improperly dismissed Peters' § 1983 [takings] claims with prejudice. It should have been dismissed without prejudice, thereby allowing the plaintiff to reassert this claim, should it become ripe in the future"). The dismissal of the other claims is with prejudice because Sequoia already was given a chance to replead after the City moved to dismiss the original complaint and because Sequoia's opposition brief, implicitly conceding that the facts alleged by the amended complaint are the best it has to offer, does not request an opportunity to replead once again in the event the amended complaint is dismissed. *See Johnson v. Wallich*, 578 F. App'x 601, 603 (7th Cir. 2014) ("Johnson also argues that the district court should have allowed him to amend his complaint to correct any deficiencies. But Johnson did

not request leave to amend his complaint, and the district court cannot abuse its discretion by denying leave to amend if Johnson never sought it."); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, *at least upon request*, to amend the complaint to correct the problem if possible.") (emphasis added); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). The court adds for good measure that any amendment would be futile—Sequoia has no conceivable First Amendment or Seventh Amendment claim; without any underlying constitutional violation it has no viable *Monell* or § 1983 conspiracy claim; it has shown itself unable to plead a colorable tortious interference claim; it cannot plausibly plead reasonable reliance on the City's alleged falsehoods for purposes of its fraud claim; and it cannot plausibly allege that it was injured by any "process" issued by the state court for purposes of its abuse of process claim. *See Han v. United Continental Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014) ("We see no basis for remanding to the district court to allow Han to amend the complaint because any amendment would be futile."); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) ("McCree also argues that the district court should have allowed him to amend his complaint before dismissing it. A court should grant leave to amend when justice requires it. But McCree never moved to amend, and moreover, any amendment to his complaint would be futile.") (citation omitted).

December 9, 2014

_____
United States District Judge